```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-10-17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ROY DEN HOLLANDER,

                      Plaintiff,

          -v-

CBS NEWS INC., MAJOR ELLIOTT GARRETT,
NBCUNIVERSAL NEWS GROUP, LESTER DON
HOLT, JR., KATHARINE BEAR TUR, CHARLES
DAVID TODD, ANDREA MITCHELL, HALLIE
MARIE JACKSON, KRISTEN WELKER, ABC NEWS
DIVISION, THOMAS LLAMAS, CECILIA M. VEGA,
JONATHAN DAVID KARL, NEWSHOUR
PRODUCTIONS LLC, GWENDOLYN L. IFILL, JOHN
YANG, LISA DESJARDINS, CABLE NEWS
NETWORK, ABILIO JAMES ACOSTA, NEW YORK
TIMES NEWSROOM, MEGAN M. TWOHEY, DAVID
BROOKS, WASHINGTON POST NEWSROOM, and
JENNA JOHNSON,

                      Defendants.

------------------------------------------------------------------X

16 Civ. 6624 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Roy Den Hollander, an attorney proceeding *pro se*, brings this lawsuit against seven television and print news organizations and 17 journalists associated with them. Hollander styles these organizations as CBS News, Inc., NBCUniversal News Group, ABC News Division, NewsHour Productions LLC, Cable News Network, the New York Times Newsroom, and the Washington Post Newsroom. Hollander alleges that these news organizations are "enterprises" within the meaning of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). He alleges that the news organizations and journalists violated RICO § 1962(c) in connection with their reporting of the 2016 United States presidential election.

Specifically, Hollander alleges, the defendants promoted and disseminated "false and misleading news reports" or commentary concerning Donald Trump's candidacy for President. Each false and misleading news report, Hollander claims, was a predicate act of wire fraud supporting a claim of racketeering.

The Court previously denied Hollander's application, during the election campaign, for injunctive relief against these defendants, on the grounds that Hollander sought a prior restraint, offensive to basic First Amendment principles. With the election over, Hollander has dropped his bid for injunctive and declaratory relief. Hollander continues, however, to pursue money damages.

Defendants now move to dismiss Hollander's First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Their arguments include that the conduct that Hollander terms wire fraud is speech protected by the First Amendment, that Hollander has not suffered an injury in fact sufficient to confer standing to bring this lawsuit, and that his RICO claims are conclusory in various respects and otherwise fail to state a claim upon which relief can be granted.

Each of these arguments is meritorious. Each requires dismissal of this lawsuit. In the interest of economy, the Court develops only one here: that dismissal is mandatory because the news reporting that Hollander assails as wire fraud is speech protected by the First Amendment of the United States Constitution for which civil damages to an offended audience are not available.

I.      **Background**[1]

---

[1] The Court's summary of Hollander's factual allegations is drawn from the FAC, Dkt. 58. For the purpose of resolving the motion to dismiss, the Court assumes all well-pleaded facts to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l*

### A. Hollander's Claims

Hollander is an attorney who resides in Manhattan. FAC ¶ 25. He alleges that the defendant media organizations propagated false or misleading news reports and commentary regarding the Trump presidential campaign. As an exhibit to the FAC, he attaches a 59-page, single-spaced "sampling" of approximately 90 examples of such news reports or commentary. Each is accompanied by Hollander's explanation of why the report or commentary was, allegedly, false, misleading, or incomplete. *See id.*, Ex. A.

The first example in Hollander's sampling is representative of Hollander's critiques. Hollander there faults defendants CBS News, Inc. and its reporter, Major Garrett, for their coverage on October 3, 2016 of statements made by Donald Trump in Northern Virginia in response to a question by a Marine veteran regarding health care for U.S. veterans. *Id.* at 1. Hollander faults these defendants for "falsity, prevarication, or dissemblance" based on their failure to include in the coverage the fact that the Marine veteran afterwards described Trump's comments as "thoughtful" and stated that he "believe[d] [Trump] is committed to helping" veterans. *Id.*

In a later example, also representative of his critiques, Hollander cites a July 28, 2016, column titled "The Democrats Win the Summer" by New York Times columnist David Brooks, a defendant in this case. There, Brooks assailed Trump for having "abandoned the Judeo-Christian aspirations that have always represented America's highest moral ideals" and called Trump a "morally untethered, spiritually vacuous man who appears haunted by multiple personality disorders." *Id.* at 48–49. Hollander faults the New York Times and Brooks for

---

*PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also considered the exhibits attached to the FAC because they are incorporated by reference or are "integral" to the FAC. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

3

"falsity, prevarication, or dissemblance" for failing to mention that "Trump often speaks of love and compassion in his speeches." *Id.* at 49. Hollander adds that "Brooks has neither the qualifications nor facts necessary to conclude that Trump has mental disorders, is amoral or is spiritually empty." *Id.*

Hollander further asks the Court to "take judicial notice of the liberal bias of the mainstream media, which includes" the defendant media organizations and reporters. FAC ¶ 54.

Hollander alleges that the defendants engaged in an act of wire fraud, constituting a RICO predicate act, each time they (1) "create[d] and cause[d] to be broadcast and disseminated false and misleading news reports concerning" candidate Trump; (2) "provide[d] and cause[d] to be broadcast and disseminated commentary based on a false set of facts or fail[ed] to reveal the factual basis for the assertion of the judgments on which the commentaries are based"; or (3) "lobb[ied] and cause[d] to be broadcast and disseminated lobbying on various news-talk shows in furtherance of their opposition to the Trump Candidacy." *Id.* ¶ 26.

Hollander alleges that the purpose of these allegedly false and misleading news reports and commentary was "to prevent Donald J. Trump from being elected President" and "to aid and abet Hillary R. Clinton in being elected President." *Id.* ¶ 27. Hollander alleges that the media organizations are liable along with the authors of the reports and commentary "because these news organizations . . . instituted policies to aid and abet the schemes to undermine the Trump Candidacy with false and misleading information." *Id.* ¶ 29. Hollander alleges the defendants aimed to "manipulate and rig this republic's electoral process," knowing that the public relies on the media "to be their surrogate observers of the Presidential campaigns, report back to them the material facts on both sides of the election battle, and provide professional judgments based on

observed facts free of intentional falsehoods, prevarications, dissemblings or ideological biases." *Id.* ¶ 30.

As relief, Hollander seeks money damages for the costs he "incurred in investigating, preventing, and rectifying the defendants' frauds." *Id.* ¶ VII.4. In the FAC, Hollander also sought (1) a declaratory judgment that defendants' conduct violated RICO; and (2) a permanent injunction prohibiting defendants "from continuing to create and cause to be broadcast and disseminated false and misleading news reports, commentaries and lobbying against the Trump Candidacy by requiring them to fact check their presentations, refrain from spinning out-of-context quotes by Trump and provide equal time to both sides." *Id.* ¶ VII.1. The Court, however, has already rejected Hollander's bid for injunctive relief as seeking a prior restraint incompatible with the First Amendment. And Hollander acknowledges that, with the 2016 presidential election having occurred, there is no longer a basis to seek injunctive or declaratory relief. In his memorandum of law opposing the motions to dismiss, he states that he now seeks only money damages. *See* Dkt. 95 at 3.

### B. Procedural History

On August 23, 2016, Hollander filed an initial complaint against a subset of the defendants eventually sued in the FAC. Dkt. 1.

Two days later, Hollander filed a motion asking the Court to issue an order directing the defendants to show cause at a hearing why a preliminary injunction should not issue enjoining them from continuing to engage in false and misleading speech. *See* Dkt. 11. In an order issued later that day, the Court denied Hollander's request. The Court explained that the relief Hollander sought would be a prior restraint, offensive to the First Amendment. Dkt. 19.

After an initial set of motions to dismiss, on October 20, 2016, Hollander amended the complaint by filing the FAC, Dkt. 58. Starting on November 4, 2016, defendants filed various motions to dismiss and memoranda of law in support. Dkts. 84–85, 93–94, 97, 100–01, 103, 105. Hollander filed memoranda of law in opposition to these motions. Dkts. 95, 104.

## II. Discussion

This lawsuit by a consumer of the national news media takes aim at constitutionally protected speech. Hollander accuses seven media organizations and journalists working for them of making allegedly false and misleading reporting and commentary on the 2016 presidential election. Hollander claims that this reporting was slanted to favor Hillary Clinton and to disfavor Donald Trump, including by omitting facts and context favorable to the Trump campaign. Hollander seeks, as a remedy, money damages. As his injury, Hollander does not claim to have been the subject of the reporting in question—he does not, for example, claim to have been libeled or defamed. Rather, Hollander claims to have taken offense at the media's misleading and biased coverage. He seeks compensation for expenses he claims to have incurred in combating this speech.

The First Amendment, and first principles of constitutional law, bar this lawsuit. The speech for which Hollander seeks relief, political speech regarding a presidential election campaign, is at the core of what the First Amendment protects. "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Id.* (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964)). As such, "speech on public issues occupies the highest

rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). It is "at the heart of the First Amendment's protection." *Id.* at 451–52 (quotation omitted).

The First Amendment does not, of course, make reporting or commentary on matters of public concern categorically off-limits as the subject of a private civil lawsuit. A plaintiff who claims libel or defamation and who can establish actual malice may pursue such claims. *See New York Times*, 376 U.S. at 279–80. And, in other limited contexts, such as speech furthering unlawful boycotts, or embedding copyright-protected material, or fraudulently soliciting money, or integral to a criminal scheme, speech touching on matters of public concern potentially may be actionable. *See, e.g.*, *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003) (holding that the First Amendment does not shield fraudulent charitable solicitations). But these are narrow exceptions reserved for the truly rare case. For it is a "general proposition that freedom of expression upon public questions is secured by the First Amendment." *New York Times*, 376 U.S. at 269. As the Supreme Court instructed a half-century ago, "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes. The Constitution specifically selected the press . . . to play an important role in the discussion of public affairs." *Mills v. Alabama*, 384 U.S. 214, 218–19 (1966).

Hollander's claim here is, at root, that the various articles, commentary, and broadcasts that he assails were inaccurate, biased, or misleading. While he labels these acts of journalism as acts of "wire fraud," in fact, he pleads no "scheme or artifice to defraud, or for obtaining money

7

or property by means of false or fraudulent pretenses, representations, or promises[.]" 18 U.S.C. § 1343. And "[s]imply labeling an action one for 'fraud,' of course, will not carry the day." *Illinois, ex rel. Madigan*, 538 U.S. at 617. And it is long settled that factual errors, actual or asserted, in speech on matters of public concern do not remove such expression from the protection of the First Amendment. Rather, as a mark of the "overriding importance" of the national commitment to uninhibited, robust, and wide-open debate on public issues, "neither factual error nor defamatory content, nor a combination of the two, suffice[s] to remove the First Amendment shield from criticism of official conduct." *Bartnicki v. Vopper*, 532 U.S. 514, 534–35 (2001); *see also United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012) ("some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee"). The First Amendment's protection of discourse on public issues "does not turn upon the truth, popularity, or social utility of the ideas and beliefs which are offered." *New York Times*, 376 U.S. at 271 (quotation omitted).

Unsurprisingly in light of these foundational principles, Hollander cites no precedent entitling a plaintiff to recover for his efforts to correct, contextualize, or neutralize another's speech on matters of public concern. Quite the contrary, the Supreme Court's 2011 decision in *Snyder v. Phelps* holds that even where outrageous speech on a matter of public concern causes emotional distress to another, the First Amendment bars recovery in a civil damages action. The Court there overturned a jury's verdict for intentional infliction of emotional distress, in favor of family members of a deceased Marine killed in the line of duty whose funeral had been picketed by caustic, hostile, homophobic picketers. The Court found that the pickets addressed matters of public concern. *Snyder*, 562 U.S. at 454 ("While these messages may fall short of refined social

8

or political commentary, the issues they highlight . . . are matters of public import."). As such, the Court held, this speech was "entitled to special protection under the First Amendment"; this precluded recovery even based on a jury finding that the picketers had engaged in "outrageous" conduct towards the Marine's family. *Id.* at 458 (quotation marks omitted). As the Supreme Court put the point: "[I]n public debate, [we] must tolerate insulting, and even outrageous, speech, in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Id.* (quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988)) (modifications in original); *see also id.* at 460 (overturning separate verdict against picketers for civil conspiracy based on similar conduct).

Hollander's claim to relief here is, of course, a far cry *weaker* than that of the plaintiff family in *Snyder*. Hollander does not allege personal distress at the defendants' news reports and commentaries regarding the 2016 presidential election. Instead, he pleads for compensation for his efforts to expose and redress the reportorial lapses that he perceives. That bid is antithetical to the First Amendment.

Hollander indeed has a remedy to the extent he is affronted by defendants' speech. It is the time-honored, out-of-court, remedy that Justice Brandeis famously identified nearly a century ago. He observed that to combat "falsehood and fallacies . . . the remedy to be applied is more speech." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, *J.*, concurring); *see also Alvarez*, 132 S. Ct. at 2550 ("The remedy for speech that is false is speech that is true. That is the ordinary course in a free society."). Hollander is at liberty to counter defendants' reporting and commentaries with speech of his own. But he may not foist on the journalists with whom he disagrees the cost of his competing speech.

9

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss the FAC. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 31, 38, 84, 93, and 100, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 10, 2017
  New York, New York